**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SANJAY SOOKUL, on behalf of himself and all
others similarly situated,

                Plaintiffs,

                v.

ANTIHERO GALLERY LLC

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CLASS ACTION COMPLAINT**
**AND**
**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Plaintiff, SANJAY SOOKUL ("Plaintiff" or "SOOKUL"), brings this action on behalf of himself and all other persons similarly situated against ANTIHERO GALLERY LLC (hereinafter "ANTIHERO GALLERY" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against ANTIHERO GALLERY for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually impaired persons throughout the United States with equal access to the goods and services ANTIHERO GALLERY provides to their non-disabled customers through https://www.AntiheroGallery.com (hereinafter "AntiheroGallery.com" or "the website"). Defendants' denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. AntiheroGallery.com provides to the public a wide array of the goods, services, price specials and other programs offered by ANTIHERO GALLERY. Yet, AntiheroGallery.com contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website.  In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, ANTIHERO GALLERY excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living.  In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility.  The lack of an accessible website means that blind people are excluded from experiencing transacting with defendant's website and from purchasing goods or services from Defendant's website.

7.  Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. ANTIHERO GALLERY's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on AntiheroGallery.com.

8.  By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9.  Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA.  Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.  Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of a Star Wars comic book on AntiheroGallery.com. However, unless Defendant remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a purchase on AntiheroGallery.com.

11. Because Defendant's website, AntiheroGallery.com, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in ANTIHERO GALLERY's policies, practices, and procedures to that Defendant's website will become and remain accessible to blind and visually-impaired consumers.  This

complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, et seq., and 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("City Law").

13. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)(c) and 144(a) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within this Judicial District.

14. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District.  Defendant purposefully targets and otherwise solicits business from New York State residents through its website and sells its products in the store in this District. Because of this targeting, it is not unusual for ANTIHERO GALLERY to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website.  In

4

Access Now, Inc. v. Otter Products, LLC 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim.  Therefore, venue is proper in [the District of Massachusetts]."  Otter Prods., 280 F.Supp.3d at 294.  This satisfies Due Process because the harm – the barred access to the website – occurred here."  Otter Prods., 280 F.Supp.3d at 293. Additionally, in Access Now, Inc. v. Sportswear, Inc., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum."  Sportswear, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11.  Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

## PARTIES

15. Plaintiff, is and has been at all relevant times a resident of Bronx County, State of New York.

16. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the New York State Human Rights Law and the New York City Human Rights Law.  Plaintiff, SANJAY SOOKUL, cannot use a computer without the assistance of screen reader software. Plaintiff, SANJAY SOOKUL, has been denied the full enjoyment of the facilities, goods and services of AntiheroGallery.com as a result of accessibility barriers on AntiheroGallery.com.

17. Plaintiff SANJAY SOOKUL is an avid comic book fan and collector, and regularly visits comic book websites as part of his hobby.

18. Defendant, ANTIHERO GALLERY LLC is a Delaware Limited Liability Company doing business in this State with its principal place of business located at 2500 S. Hwy 183 Unit 520 Austin, TX 78744.

19. ANTIHERO GALLERY provides to the public a website known as AntiheroGallery.com which provides consumers with access to various articles of comic books. Consumers across the United States use Defendant's website to purchase these items. Defendant's website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  See Victor Andrews v. Blick Art Materials, LLC, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017). The inaccessibility of AntiheroGallery.com has deterred Plaintiff from making an online purchase of a Star Wars comic book.

## **NATURE OF THE CASE**

19. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

20. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen.  Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

21. For screen-reading software to function, the information on a website must be capable of being rendered into text.  If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

22. Blind users of Windows operating system-enabled computers and devises have several screen-reading software programs available to them. Non Visual Desktop Access, otherwise known as "NVDA" is currently one of the most popular, downloaded screen-reading software program available for blind computer users.

23. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.1 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## **FACTUAL ALLEGATIONS**

24. Defendant controls and operates AntiheroGallery.com in New York State and throughout the United States.

7

25. AntiheroGallery.com is a commercial website that offers products and services for online sale. The online store allows the user to view comic books and perform a variety of other functions.

26. Among the features offered by AntiheroGallery.com are the following:

   a) Consumers may use the website to connect with ANTIHERO GALLERY on Facebook; and Instagram.

   b)    an online store, allowing customers to purchase comic books for delivery to their doorsteps, and;

   c)    Information about shipping and return policies, volume discounts, and about the company, amongst other features.

27. This case arises out of ANTIHERO GALLERY's policy and practice of denying the blind access to the goods and services offered by AntiheroGallery.com. Due to ANTIHERO GALLERY's failure and refusal to remove access barriers to AntiheroGallery.com, blind individuals have been and are being denied equal access to ANTIHERO GALLERY, as well as to the numerous goods, services and benefits offered to the public through AntiheroGallery.com.

28. ANTIHERO GALLERY denies the blind access to goods, services and information made available through AntiheroGallery.com by preventing them from freely navigating AntiheroGallery.com.

29. AntiheroGallery.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access for some elements on the website, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

30. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on AntiheroGallery.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind AntiheroGallery.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

31. AntiheroGallery.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as AntiheroGallery.com, these forms include fields to select color, item size, and quantity. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

32. When visiting the Website, Plaintiff, using JAWS and other screen readers, encountered the following specific accessibility issues:

- Keyboard focus is not visible on certain elements: the 'All categories' and 'Black packs of Mystery' button do not have any visible focus indicator. Without a clearly visible and easily distinguishable focus indicator, Plaintiff had difficulty navigating the website.

- Price slider is labelled insufficiently. Plaintiff could not understand the purpose of the price slider because "to" and "from" were not included in the alternative text.

- 'Quick view' buttons were announced without any context, and with the same name without clarifying which topic they refer to. Without a unique and descriptive label Plaintiff was confused navigating the site.

- Carousel thumbnail buttons are missing accessible names, they are announced simply as 'Button' by Plaintiff's screen reader, which was confusing for him.

- 'Next-Previous' and 'Increase/Decrease' buttons were skipped by Plaintiff's reader so he could not cycle through the images of the comics or select quantity.

- Similarly, the 'FAQ' button could not be read by Plaintiff's reader so he could not acces the website's FAQ section.

- Checkboxes fail WCAG color contrast ratio requirements with '#E4E9EB' foreground and '#FFFFFF' background, a color contrast of 1.2:1.

Consequently, blind customers in general are essentially prevented from purchasing any items on AntiheroGallery.com.

33. AntiheroGallery.com requires the use of a mouse to complete a purchase. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, AntiheroGallery.com 's inaccessible design, which requires the use of a mouse to complete a purchase, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on AntiheroGallery.com.

34. Due to AntiheroGallery.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if AntiheroGallery.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar element on Defendant's website in an attempt to reach the desired service. Thus, AntiheroGallery.com 's inaccessible design, which requires the use of a mouse to complete a purchase, denies Plaintiff and blind customers the ability to independently make purchases on AntiheroGallery.com.

35. AntiheroGallery.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use AntiheroGallery.com and who would otherwise be able to fully and equally enjoy the benefits and services of AntiheroGallery.com in New York State and throughout the United States.

36. Plaintiff, SANJAY SOOKUL, has made numerous attempts to complete a purchase on AntiheroGallery.com, most recently on November 6, 2023, but was unable to do so independently because of the many access barriers on Defendant's website. These access barriers have caused AntiheroGallery.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons. Amongst other access barriers experienced, Plaintiff was unable to make an online purchase of a Star Wars comic book.

37. Moreover, Plaintiff plans on visiting the website in the future to make purchases of comic books, as he is a comic book collector. He is not able to complete a purchase on the website currently, as a sighted individual is able to do, which causes him a continuous injury. Plaintiff enjoys ANTIHERO GALLERY's various selections and would like to order comics to be shipped directly to his home from Defendant's website.

38. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, AntiheroGallery.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

39. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of AntiheroGallery.com.

40. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)     constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b)     constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c)     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

41. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

42. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of AntiheroGallery.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

## CLASS ACTION ALLEGATIONS

43.  Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access AntiheroGallery.com and as a result have been denied access to the enjoyment of goods and services offered by AntiheroGallery.com, during the relevant statutory period."

44. Plaintiff seeks certification of the following New York subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access AntiheroGallery.com and as a result have been denied access to the enjoyment of goods and services offered by AntiheroGallery.com, during the relevant statutory period."

45. There are hundreds of thousands of visually-impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually-impaired. Id.  Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

46. This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of AntiheroGallery.com. Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse, select and shop on AntiheroGallery.com.

47. There are common questions of law and fact common to the class, including without limitation, the following:

   (a)   Whether AntiheroGallery.com  is a "public accommodation" under the ADA;

(b)   Whether AntiheroGallery.com  is a "place or provider of public accommodation" under the laws of New York;

(c)   Whether Defendant, through its website, AntiheroGallery.com, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

(d)   Whether Defendant, through its website, AntiheroGallery.com, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of New York.

48.  The claims of the named Plaintiff are typical of those of the class.  The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims ANTIHERO GALLERY has violated the ADA, and/or the laws of New York by failing to update or remove access barriers on their website, AntiheroGallery.com, so it can be independently accessible to the class of people who are legally blind.

49.  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class.  Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

50.  Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

51.  Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

52. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## **FIRST CAUSE OF ACTION**

### **(Violation of 42 U.S.C. §§ 12181 et seq. – Title III of the Americans with Disabilities Act)**

53. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 of this Complaint as though set forth at length herein.

54. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

55. AntiheroGallery.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7).

56. Defendant is subject to Title III of the ADA because it owns and operates AntiheroGallery.com.

57. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate

in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

58. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

59. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

60. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

61. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their

website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

62. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder.  Patrons of ANTIHERO GALLERY who are blind have been denied full and equal access to AntiheroGallery.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

63. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

64. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of AntiheroGallery.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

65. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

66. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

67.  Plaintiff is also entitled to reasonable attorneys' fees and costs.

68.  Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
**(Violation of New York State Human Rights Law, N.Y. Exec. Law**
**Article 15 (Executive Law § 292 et seq.))**

69. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 72 of this Complaint as though set forth at length herein.

70. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

71. AntiheroGallery.com is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

72. Defendant is subject to the New York Human Rights Law because it owns and operates AntiheroGallery.com.  Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

73. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to AntiheroGallery.com, causing AntiheroGallery.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

74. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

75. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is

18

excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

76. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

77. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

   (a)    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

   (b)    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

   (c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

78. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

79. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or

opportunities of AntiheroGallery.com under N.Y. Exec. Law § 296(2) et seq. and/or its implementing regulations.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

80. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

81.  Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) et seq. for each and every offense.

82. Plaintiff is also entitled to reasonable attorneys' fees and costs.

83. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law, NY CLS Civ R, Article 4 (CLS Civ R § 40 et seq.))**

84. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 87 of this Complaint as though set forth at length herein.

85. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law §41.

86. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons.  No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

87. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or his civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

88. AntiheroGallery.com is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

89. Defendant is subject to New York Civil Rights Law because it owns and operates AntiheroGallery.com. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

90. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to AntiheroGallery.com , causing AntiheroGallery.com  to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

91. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

92. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

93. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

94. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

95. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly indirectly refused, withheld form, or denied the accommodations, advantages, facilities and privileges thereof in §40 et seq. and/or its implementing regulations.

96. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 et seq. for each and every offense.

**FOURTH CAUSE OF ACTION**
**(Violation of New York City Human Rights Law,**
**N.Y.C. Administrative Code § 8-102, et seq.)**

97. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 100 of this Complaint as though set forth at length herein.

98. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

99. AntiheroGallery.com is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

100.     Defendant is subject to City Law because it owns and operates AntiheroGallery.com. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

101.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to AntiheroGallery.com, causing AntiheroGallery.com to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Administrative Code § 8107(15)(a).

102.     Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

  (a)    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

  (b)    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

  (c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

103.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory

conduct.  These violations are ongoing.

104.     As such, Defendant discriminates, and will continue in the future to discriminate against

Plaintiff and members of the proposed class and subclass on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or

opportunities of AntiheroGallery.com under N.Y.C. Administrative Code § 8-107(4)(a) and/or its

implementing regulations.  Unless the Court enjoins Defendant from continuing to engage in these

unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

105.     The actions of Defendant were and are in violation of City law and therefore Plaintiff

invokes his right to injunctive relief to remedy the discrimination.

106.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under

N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

107.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

108.     Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies,

procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth

below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

109.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in

paragraphs 1 through 112 of this Complaint as though set forth at length herein.

110.     An actual controversy has arisen and now exists between the parties in that Plaintiff

contends, and is informed and believes that Defendant denies, that AntiheroGallery.com  contains

access barriers denying blind customers the full and equal access to the goods, services and

facilities of AntiheroGallery.com , which ANTIHERO GALLERY owns, operates and/or controls,

24

fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq. prohibiting discrimination against the blind.

111.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a)     A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b)     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, AntiheroGallery.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that AntiheroGallery.com is readily accessible to and usable by blind individuals;

c)     A declaration that Defendant owns, maintains and/or operates its website, AntiheroGallery.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d)     An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e)      An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f)      Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g)      Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h)      For pre- and post-judgment interest to the extent permitted by law; and

i)      For such other and further relief which this court deems just and proper.


Dated:        January 16, 2023

                                        MARS KHAIMOV LAW, PLLC
                                        *Attorneys for Plaintiff*

                                        **/s/ *Mars Khaimov***

                                        By: Mars Khaimov, Esq.
                                            108-26 64th avenue, Second Floor
                                            Forest Hills, New York 11375
                                            Tel (929) 324-0717
                                            Fax (929) 333-7774
                                            Email: mars@khaimovlaw.com